**Jack POLAK, as Trustee for Catharina Polak, and Anthony Polak, Plaintiffs,**

**v.**

**CONTINENTAL HOSTS, LTD., Stanley Lewin, Bruce Lewin, and Marjorie Lewin, Defendants.**

**No. 85 Civ. 1154 (RWS).**

United States District Court,
S.D. New York.

June 28, 1985.

Zissu, Berman, Halper & Gumbinger, New York City, for plaintiffs; Ira W. Berman, of counsel.

Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, New York City, for defendants; Allan R. Freedman, Robert J. Schechter, of counsel.

## OPINION

SWEET, District Judge.

Defendants Continental Hosts, Ltd. ("Continental"), Stanley Lewin, Bruce Lewin and Marjorie Lewis (the "individual defendants"), have moved to dismiss the complaint of the two plaintiffs Jack Polak (the "Disclosure Plaintiff") and Anthony Polak (the "Merger Plaintiff"), shareholders of Continental, pursuant to Rule 12(b)(6), Fed. R.Civ.P. The complaint, in the form of a class action, alleges a violation of Rule 10(b)(5) promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j. *See* 17 C.F.R. 240, 10b–5. The motion will be granted for the reasons set forth below.

On or about February 4, 1985 the Merger Plaintiff received notice that Continental Hosts Acquisition Corp. ("CHAC") had been formed and that Continental would be merged into CHAC (the "Merger"). The notice received by the Merger Plaintiff stated that "public shareholders will be paid $12 per share for their shares but that they will have the rights provided under DCL (Delaware Corporate Law), in lieu of acceptance of the $12 offered, to demand an appraisal of the value of CHL (the "Company") shares and to commence a proceeding for appraisal in the Delaware Chancery Court ..." Complaint, ¶ 32. The Merger Plaintiff purports to represent all current shareholders of the Company who purchased their shares before February 1, 1985 and whose shares are subject to the Merger.

According to the Merger Plaintiff, the $12 price announced under the Merger is "grossly inadequate" (Complaint, ¶ 33) and the appraisal right under Delaware law "presents the public shareholders with an unfair burden." (Complaint, ¶ 34) and that these allegations state a claim under Rule 10b–5, (Complaint, ¶¶ 32–35).

The Disclosure Plaintiff purports to represent a class of all persons who sold shares of the Company between April 9, 1982 and February 1, 1985. According to the Disclosure Plaintiff, he and the class sold their shares at an artifically low price caused by the defendants' failure to disseminate "all pertinent financial information respecting the Company." (Complaint, ¶ 19). The complaint alleges:

Since April 1981, CHL [the Company] and the Individual Defendants have called no annual meeting and have failed and refused to distribute CHL financial and operations information to the public shareholders or to market makers in its securities.

Complaint, ¶ 16.

It is conceded that the Company has been a "non-reporting company" under the Exchange Act since 1976 (Complaint, ¶ 12), and that the defendants had no obligation to call an annual meeting under Delaware law (Complaint, ¶¶ 17–19). The complaint further alleges that Continental purchased approximately 33,000 of its shares between 1979 and 1983. Complaint, ¶ 31.

■ There are no allegations by the Merger Plaintiff of any misrepresentations or material nondisclosures in any material issued by Continental. The Merger Plaintiff contends that offering a "grossly inadequate" price and requiring shareholders in a Delaware corporation to avail themselves of Delaware appraisal procedures constitutes "fraud" or "manipulation" under Rule 10b–5, although no effort to obtain injunctive relief with respect to the Merger was made. The Merger was apparently consummated on February 28, 1985.

The argument advanced by the Merger Plaintiff was rejected by the Supreme Court in its landmark decision, *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), which specifically held that no claim under Rule 10b–5 was stated by a shareholder of a Delaware corporation confronted with a merger, regardless of the alleged inadequacy of the price being offered pursuant to the merger. The Supreme Court held that the shareholder's sole remedy was to pursue appraisal rights under Delaware law. 430 U.S. at 477–80, 97 S.Ct. at 1302. It further held that the shareholder had not made out a claim for either "fraud" or "manipulation" under Rule 10b–5. *Id.* at 472–77, 97 S.Ct. at 1300–03.

■ As to the failure to disclose in connection with the merger, Rule 10b–5 is violated only if non-disclosure violates a recognized duty of disclosure. As the Supreme Court has stated:

The cases have emphasized, in accordance with the common-law rule, that "[t]he party charged with failing to disclose market information must be under a duty to disclose it." *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275, 282 (2d Cir.1975). Accordingly, a purchaser of stock who has no duty to a prospective seller ... has been held to have no obligation to reveal material facts. *See General Time Corp. v. Talley Industries, Inc.,* 403 F.2d 159, 164 (2d Cir.1968), *cert. denied,* 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969).

*Chiarella v. United States,* 445 U.S. 222, 229, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980). *See also Laventhall v. General Dynamics Corp.,* 704 F.2d 407, 412 (8th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983). ("It is important, however, to emphasize that no cause of action arises under Section 10(b) or Rule 10b–5 simply because an insider has inside information and fails to disclose it"); *Staffin v. Greenberg,* 672 F.2d 1196, 1202 (3d Cir.1982) (if "no duty to disclose exists," then there can be no rule 10b–5 liability, even if undisclosed facts are material).

In the present case, the defendants had no duty to hold annual meetings or to disclose information relating to the Company's financial status, Continental having become a non-reporting company.

■ While material inside information may be assumed, the mere possession of such information does not create a duty to disclose. *See e.g., State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 850

(2d Cir.1981); *Laventhall v. General Dynamics Corp., supra,* 704 F.2d at 412 ("it is important, however, to emphasize that no cause of action arises under Section 10(b) or Rule 10b–5 simply because an insider has inside information and fails to disclose it"). Absent a specific duty to disclose, even the most material information imaginable may be withheld from the public. *See Chiarella v. United States, supra,* 445 U.S. at 229, 100 S.Ct. at 1115.

 The Disclosure Plaintiff seeks to establish a duty to call annual meetings after April 1981 to provide information informally requested by the Disclosure Plaintiff and his attorneys. No affirmative misrepresentations are alleged.

The Disclosure Plaintiff alleges that the individual defendants caused the Company "to purchase in the public market approximately 33,000 of its shares between 1979 and 1983 without disclosure thereof...." (Complaint, ¶ 31). The "disclose or abstain" rule was announced by the Second Circuit in *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969):

> [A]nyone in possession of material inside information must either disclose it to the investing public, or, if he is disabled from disclosing it ..., or he chooses not to do so, must abstain from trading it or recommending the securities concerned while such inside information remains undisclosed.

*Id.* at 848. However, the Second Circuit has limited standing to assert "disclose or abstain" violations to plaintiffs who traded contemporaneously with the defendant:

> In *Shapiro [v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 495 F.2d 228, 236 (2d Cir.1974)]*, this court held inside sellers subject to a duty to disclose only to those who purchased the stock "during the same period" as the insiders' sales.... Any duty of disclosure is owed only to those investors trading contemporaneously with the insider; noncontemporaneous traders do not require the protection of the "disclose or ab-

stain" rule because they do not suffer the disadvantage of trading with someone who has superior access to information.

*Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 94–95 (2d Cir.1981); *see also Fridrich v. Bradford,* 542 F.2d 307, 326 (6th Cir.1976) (Celebrezze, J., concurring), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 769 (1977).

In the present case, the Disclosure Plaintiff does not claim that he sold any stock contemporaneously with Continental's purchases of such stock. The complaint itself maintains that the Disclosure Plaintiff sold all his stock on April 3, 1984. It further alleges that Continental purchased its own stock "between 1979 and 1983." *Id.* at ¶ 31. Thus, the Disclosure Plaintiff has failed to allege that he traded "contemporaneously with the insider," 648 F.2d at 94.

The failure to call meetings and failure to provide financial information to a shareholder who made a series of informal requests is all expressly authorized under Delaware corporate law. Such conduct, therefore, cannot violate Rule 10b–5, since any other result would federalize state regulation of corporations. As the Supreme Court held in *Santa Fe Industries, Inc. v. Green, supra.*

> Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden. As the Court stated in *Cort v. Ash* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)]*, supra:* "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." 422 U.S. at 84 [95 S.Ct. at 2091] (emphasis added).

430 U.S. at 479, 97 S.Ct. at 1302.

Further, Delaware law provides a familiar procedure whereby shareholders can de-

mand to inspect the books and records of a corporation. Delaware General Corporation Law ("DCL") § 220. Under § 220, a shareholder desiring to inspect the books and records must make a demand under oath, stating the purpose for which inspection is sought. If the corporation refused the demand, the shareholder's sole remedy is in the Delaware Chancery Court. *Id.* To hold that rule 10b–5 required the defendants to provide financial information in response to informal requests would override DCL § 220 and improperly create a federal rule for shareholder inspection of books and records. As the Supreme Court held in *Santa Fe Industries, Inc. v. Green, supra,* Rule 10b–5 should not be used in such a fashion.

Finally, the Disclosure Plaintiff has not even attempted to allege that any of the individual defendants violated duty of disclosure. All allegations of nondisclosure are directed against the Company (*e.g.,* failure to call meetings, failure to disseminate financial information). There are no allegations of insider trading by any individual defendant, nor are there any allegations from which a duty to disclose can be inferred.

Similarly, the Merger Plaintiff has complained about the inadequacy of the price being offered under the Merger. There are no allegations that any of the individual defendants did anything, said anything, or failed to say anything in connection with the Merger. The plaintiffs also assert that the obligation to disseminate financial information survived the de-registration of CHL's stock in 1976. Under section 13 of the Securities Exchange Act of 1934 (the "Act"), every issuer of securities "registered pursuant to section 12 of this title" must file a variety of financial disclosures. When CHL registered its shares under section 12 of the Act in 1969, it therefore represented that it would disseminate financial information as required. Once the shares were no longer registered under section 12 of the Act, the section 13 obligation evaporated. No authority has been cited for the proposition that a company whose stock used to be registered under section 12 has a continuing obligation under section 13, even after de-registration, to disseminate financial information.

As shown above, the plaintiffs have failed to state claims under Rule 10b–5. Under established rules of pendent jurisdiction, dismissal of the Rule 10b–5 claim would require dismissal of the pendent state law claims as well. *See, e.g., United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974); *In re Investors Funding Sec. Lit.,* 523 F.Supp. 550, 560 (S.D.N.Y.1980).

The defendants' motion to dismiss the complaint is granted.

IT IS SO ORDERED.